**JACOBS PARTNERS LLC**
Mark R. Jacobs (*Pro Hac Vice*)
Robert M. Fleischer (*Pro Hac Vice*)
Les L. Lane (*Pro Hac Vice*)
Merritt View
383 Main Avenue
Norwalk, Connecticut 06851
Tel:  (203) 846-6622
Fax: (203) 946-6621

**Attorneys for the Plaintiff,**
**Robert I. Hanfling, Chapter 7 Trustee for ATG, Inc.**

- and –

**BERLINER COHEN**
Jonathan D. Wolf (SB# 127043)
Ten Almaden Boulevard, 11th Floor
San Jose, CA 95113
Tel: (408) 286-5800
fax: (408) 998-5388

**Local counsel for Plaintiff, Robert I. Hanfling,**
**Chapter 7 Trustee for ATG, Inc.**

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| ROBERT I. HANFLING, CHAPTER 7 TRUSTEE FOR ATG, INC., | Case No.: |
| Plaintiff, | |
| vs. | |
| DOREEN CHIU, FRANK CHIU, GEORGE DOUBLEDAY, DAVID CHAN, EDWARD VINECOUR, RIO CHAO, DAVID R. SEBASTIAN, JAMES E. THOMAS, DENNIS WILLIAMSON, ERIC C. SU, FRED FEIZOLLAHI, and WILLIAM HEWITT, | **COMPLAINT AND DEMAND FOR <u>JURY TRIAL</u>** |
| Defendants | |

The Plaintiff, Robert I. Hanfling (the "Trustee" or "Plaintiff"), the duly

appointed Chapter 7 Bankruptcy Trustee for ATG, Inc., by and through his

1    undersigned counsel, hereby makes and files this Complaint (the

2    "Complaint") against the defendants and, as grounds for his Complaint

3    against defendants, respectfully states and alleges as follows:

4                                         I.

5                           **NATURE OF ACTION**

6       1.    The Trustee brings this action on behalf of the Estate of ATG, Inc.

7    against the Defendants, all former officers or directors or both of ATG, Inc., to

8    redress, *inter alia*, Defendants' breaches of fiduciary duties, breaches of duty of

9    loyalty and care, mismanagement, waste of corporate assets and abuse of control

10   during the period beginning February 12, 1998    through and including

11   February 6, 2002 (the "Relevant Period") and to recover profits reaped by

12   Defendants' usurpation of corporate information and opportunities for their own

13   personal benefit and/or for the benefit of other persons or entities related to or

14   controlled by Defendants.

15

16                           **JURISDICTION**

17      2.    Jurisdiction of this Court is proper pursuant to 28 U.S.C. § 1334(b)

18   in that this is a civil proceeding arising in or related to a case under Title 11 of

19   the United States Code (the "Bankruptcy Code"), specifically the pending

20   chapter 7 bankruptcy proceeding of ATG, Inc. (Case No. 01-46389 (RJN))

21   pending in the United States Bankruptcy Court for the Northern District of

22   California.

23      3.    Venue of this Adversary Proceeding is proper in this Court pursuant

24   to 28 U.S.C. § 1409.

25      4.    This Court has personal jurisdiction over the Defendants due to the

26   fact that Defendants either reside in California, have an agent in California,

1    transact business in the State of California, or have committed a tort in whole or

2    in part in California.

3

4                                    **PARTIES**

5           5.      Plaintiff is the duly appointed chapter 7 trustee for the estate of

6    ATG, Inc. (together with ATG Richland Corp., ATG Catalytics, LLC and ATG

7    Nuclear Services LLC, "ATG", the "Company" or the "Debtor"), debtor in the

8    above-captioned chapter 7 proceeding (the "Bankruptcy Case"), which is

9    presently pending before the United States Bankruptcy Court for the Northern

10   District of California (Case No. 01-46389 (RJN)).

11          6.      Plaintiff brings this action in the capacity hereinabove named, and

12   also as the representative of the estate of the Debtor to pursue various claims on

13   behalf of the estate and the creditors and shareholders thereof who suffered

14   generalized injuries as a result of Defendants' acts, errors and/or omissions, and

15   in all other capacities recognized by the bankruptcy laws of the United States of

16   America and bestowed upon bankruptcy trustees for purposes of bringing causes

17   of action for the benefit of debtors, their estates, creditors, and all others

18   claiming by, through or under them.

19          7.      Each of the individuals listed in Paragraphs (9) through (20) below

20   are included in the term "Defendants" as used in this Complaint, and are hereby

21   sued jointly and severally by Plaintiff for all causes of action set forth herein.

22          8.      Doreen Chiu was an officer and director of ATG at all times during

23   the Relevant Period.

24          9.      Frank Chiu was an officer and director of ATG at all times during

25   the Relevant Period.

10.     George Doubleday was an officer or director or both of ATG during the Relevant Period.

11.     David Chan was an officer or director or both of ATG during the Relevant Period.

12.     Edward Vinecour was an officer or director or both of ATG during the Relevant Period.

13.     Rio Chao was an officer or director or both of ATG during the Relevant Period.

14.     David R. Sebastian was an officer or director or both of ATG during the Relevant Period.

15.     James E. Thomas was an officer or director or both of ATG during the Relevant Period.

16.     Eric C. Su was an officer or director or both of ATG during the Relevant Period.

17.     Fred Feizollahii was an officer or director or both of ATG during the Relevant Period.

18.     William Hewitt was an officer or director or both of ATG during the Relevant Period.

19.     All of the Defendants, by reason of their positions as officers or directors or both of ATG, had, at all times they held such positions, the power to control and influence the Company's actions in proposing, negotiating, considering, approving or ratifying the Company's actions with respect to all transactions and acts underlying the allegations of this Complaint.

20.     Each of the Defendants owed fiduciary duties of loyalty, due care and good faith to the Company, its shareholders and its creditors.  As part of these fiduciary duties, during their respective tenures, the Defendants were required to, among other things, (a) refrain from abusing their positions of

1   control and influence to further their private interests, (b) exercise independent

2   and informed judgment when approving or ratifying the Company's actions, and

3   (c) act in furtherance of the best interests of the Company, its shareholders and

4   creditors.

5       21.    In addition, each of the Defendants, in his or her capacity as a

6   director and/or officer of ATG, was entrusted with the Company's assets and

7   had an obligation to the Company to protect the Company's assets from undue

8   loss or waste.

9

10                          **FACTUAL BACKGROUND**

11      22.    ATG, a California corporation, was incorporated in March of 1980.

12  Prior to the commencement of the Bankruptcy Case, the Company operated a

13  radioactive waste management business that offered comprehensive thermal and

14  non-thermal treatment solutions for low-level radioactive and low-level mixed

15  waste generated by commercial, institutional and government clients such as

16  nuclear power plants, medical facilities, research institutions and the United

17  States Departments of Defense and Energy.

18      23.    The Company owned and operated facilities in Richland,

19  Washington, Oak Ridge, Tennessee, and Columbia, South Carolina, and was

20  licensed by Federal and State authorities to process low-level radioactive and

21  mixed waste.  The Company also performed, through its Nuclear Services

22  Division, waste processing, waste removal, and waste cleaning services at

23  nuclear power plants and other private and governmental sites at which

24  radioactive materials have been or are present.

25      24.    The Nuclear Services Division further provided and/or arranged for

26  equipment and services to transport radioactive materials from such sites and

facilities on behalf of their owners to intermediate processing facilities (primarily those of the Debtor) and to final burial sites.  Although most of the Nuclear Services Division's revenues came from the United States, the Division also did business with South Korea and Brazil.

25.    The Company has three subsidiaries: ATG Richland Corp. ("ATG Richland"), ATG Nuclear Services LLC ("ATG Nuclear Services"), and ATG Catalytics, LLC ("ATG Catalytics") (collectively, the "Subsidiaries"), each of which is a debtor in a case under chapter 7 of the Bankruptcy Code.

26.    From 1992 to some time in 1999, the Company owned real property in Fremont, California which served as the Company's headquarters facility.

27.    In 1999, the Company sold the property in Fremont and relocated its headquarters to a leased facility in Hayward, California.  The Company employed approximately 300 employees at its Hayward corporate headquarters and other facilities.

28.    Upon its inception in 1980, ATG's shares were privately held. On February 12, 1998, ATG made an initial public offering whereby its shares were listed for sale on the NASDAQ Stock Market ("NASDAQ") under the trading symbol "ATGC."

**Events Leading Up To Bankruptcy**

29.    On November 1, 1999, the Company entered into a secured credit reimbursement agreement (the "Credit Agreement") with a consortium of banks (the "Bank Group") pursuant to which the Company was authorized to borrow up to $18 million from Bank Group. In addition, the Credit Agreement included a letter of credit in support of tax exempt industrial revenue bonds in the aggregate face amount of $26.5 million. United California Bank ("UCB" and now the Bank of the West) served as agent for the Bank Group. The purpose of

the Credit Agreement was, inter alia, to fund development and construction of new waste processing technology called "Gasvit" that would enable the Company to add the capability to treat mixed waste chemical and low level radioactive waste materials. The Gasvit system was to use the two technologies of "gasification" and "vitrification" to destroy toxic and non-toxic organic materials, reduce waste volume, and vitrify radioactive residues into a durable and leach resistant glass like material.

30.    Pursuant to the Credit Agreement, the Company pledged all of its assets, including accounts receivable and cash, as collateral to secure the Company's obligations under the Credit Agreement.

31.    Pursuant to the Credit Agreement, the Company was obligated to comply with specific covenants including, but not limited to: (i) capital asset acquisition limits; (ii) limits on additional debt; (iii) minimum levels of tangible net worth, (iv) dividend payment restrictions; and (v) financial ratios.

32.    Just two months after entering into the Credit Agreement, the Company violated its financial covenants under the Credit Agreement for the period ending December 31, 1999. In response to these violations, the Bank Group waived the defaults, increased the credit line by almost $6 million to approximately $24 million and revised the financial ratio covenants in the Credit Agreement.

33.    In the very next reporting period, for the quarter ending March 2000, the Company violated the revised financial ratios and thereby breached the financial covenants under the Credit Agreement.

34.    In response, the Bank Group agreed to forebear on the Company's repayment of the additional borrowing ($5,750,000) until June 30, 2000. However, on June 30, 2000, the Company has failed to make this payment and

the forbearance expired. The Company has remained in default of the Credit Agreement since that time.

35.     In October of 2000, the Defendants, utterly and hopelessly unable to resolve the Debtor's financial problems, hired Vik Mani to serve as the Company's new chief operations manager. Notwithstanding the Company's severe cash shortages, the Defendants caused the Company to agree to pay Mr. Mani a signing bonus of $560,000 to work for the Company.

36.     On October 26, 2001, NASDAQ halted trading of ATG's shares.

37.     On November 2, 2001, UCB advised the Company that judgment liens of over $417,000 had been levied on ATG's bank accounts. The levies related to judgments entered in favor of Apollo Inc. and Apollo Sheet Metal Inc. That same day, in response to the levies, UCB froze the Company's bank accounts in order to protect the Bank Group's right to retain its security interest in the full amount in the accounts with priority over the levies.

38.     Upon freezing the Company's bank accounts, UCB representatives advised the Company of the Bank Group's willingness to discuss and negotiate cash collateral issues as part of a bankruptcy filing that would allow the Company to keep its employees, maintain its operations and continue doing business with its customers as a means to continue to generate revenue while restructuring its finances.

39.     Unwilling to negotiate suitable arrangements for the use of cash collateral with UCB, the Defendants forced the Company to lay off most of its employees and shut down its operations to a minimal "safe mode" level on November 19, 2001.

40.     By letter dated November 20, 2001, NASDAQ issued a Staff Determination to ATG indicating that that the company had failed to comply with the September 30, 2001 Form 10Q filing requirement for continued listing and that its

securities were, therefore, subject to delisting from the NASDAQ stock market.
Thereafter, the Defendants requested a hearing before a NASDAQ Listings
Qualifications Panel to review the Staff Determination.

41.     On November 21, 2001, representatives of UCB learned that the
security service that provided guards for the Company's Richland, Washington
facility would be removed from the facility unless the security service received
immediate payment for past due services provided to the Company. UCB was
required to wire funds to the security service in order to keep the guards at the
facility on a 24-hour a day basis through November 29, 2001.

42.     In late November 2001, the Company maintained deposit accounts
at UCB with positive balances of almost $4 million.  On November 27, 2001, the
Company obtained the release of $1 million in funds to pay alleged "critical
expenses".  The Defendants, however, caused the Company to expend funds
during this quickly consume a majority of those funds and the Company was
promptly left with little available cash.  In particular, none of those funds were
used to pay the $138,584 fee due to the State of Washington Department of
Ecology.  The Defendants' failure to cause ATG to pay that fee put it at risk of
the State of Washington terminating ATG's licenses to operate.

43.     The Defendants did, however, cause the company to expend
significant funds during 2001 on various non-critical expense items, including,
but not limited to:

(a) upon information and belief, lease payments totaling $52,000 for a non-
functioning florescent bulb crushing machine paid to Heart Recycling Company,
an entity who's principals, upon information and belief, are related to
Defendants Frank and Doreen Chiu.

(b) upon information and belief, a payment to Defendants Frank Chiu and
Doreen Chiu in the total approximate amount of $184,000 from the proceeds of

1     the sale of real property owned by the Company in Folsom, Californion,

2     recorded in the Company's books and records as a payment on account of loans

3     owed by the Company to the Chius;

4     (c) further payments to Defendant Frank Chiu totaling approximately $322,000

5     on account of debts ostensibly owed by the Company to Defendant Frank Chiu;

6     and

7     (d) further payments to Defendant Doreen Chiu totaling approximately $357,909

8     on account of debts ostensibly owed by the Company to Defendant Frank Chiu.

9     44.    In addition, the Defendants caused the Company to expend $24,000

10     in November of 2001 in order to obtain a hearing to contest the NASDAQ

11     delisting determination. On information and belief, the Defendants caused the

12     Company to pay this fee for their personal benefit because of their substantial

13     ownership of ATG stock, which holdings would have been rendered virtually

14     worthless if the stock were delisted, even though ATG had, in fact, failed ti file

15     its latest SEC report as asserted by NASDAQ and was, therefore, in violation of

16     NASDAQ listing requirements and its bankruptcy filing was imminent.

17     45.    On December 3, 2001 (the "Petition Date"), ATG sought protection

18     under chapter 11 of the Bankruptcy Code.  By this time, however, the Bank

19     Group had lost all confidence in the Debtor's former senior management, and

20     refused to consent to the use of their cash collateral.  On January 14, 2002, after

21     it became known that a creditor, who had sued the Company and certain of the

22     Defendants, had obtained a judgment which included a finding of fraud against

23     Defendant Doreen Chiu, UCB in its capacity as agent for the Bank Group filed a

24     motion seeking the appointment of a chapter 11 trustee.

25

26

27

1   **Factors Precipitating Company's Bankruptcy**

2        46.    Upon information and belief, the Company's commencement of its

3   voluntary chapter 11 case was precipitated by several factors, all of which were

4   the result of the Defendant's mismanagement of the Company. These examples

5   of the Defendants' mismanagement include, but are not limited to:

6       (a) the freezing of the Debtor's bank accounts as a result of the levies

7       imposed by certain creditors of ATG;

8

9       (b) the Company's acquisition of the Oak Ridge, K-25, Quanterra and

10       Nuclear Services Division Assets from the chapter 11 estate of Molten

11       Metals Technologies, Inc.  Upon information and belief, the Company

12       substantially overpaid for those assets.  The debt burden of that

13       acquisition and the inability of the Defendants to operate the Company's

14       Tennessee facilities profitably resulted in a sustained cash flow losses by

15       the Company;

16

17       (c) the Company's severe technical problems in its efforts to design and

18       complete construction of its new Gasvit thermal processing system, with

19       resultant large cost overruns. The Defendants caused the Company to

20       continue to invest significant funds into this technology even after it

21       became obvious, or should have become obvious, to the Defendants that

22       the technology would not reach performance capable of generating

23       revenue sufficient to provide any return on the amounts invested by the

24       Company to develop the system;

25

26       (d) The Defendants caused the Company to incorrectly price its services,

27       and as a result, the Company had significant ongoing losses from

1    operations;

2

3    (e) the Company received a significant amount of waste from customers

4    who prepaid for processing and disposal.  Due to its continued cash flow

5    shortage, however, the Company was unable to complete that processing,

6    leaving a large amount of unprocessed waste at the Company's facilities.

7    On the date the Company filed bankruptcy, there was approximately 6

8    million lbs. of customers' unprocessed low level radioactive waste

9    materials, 1 million lbs. of customers' unprocessed mixed waste materials,

10   and 2 million lbs. of secondary waste materials remaining at the Debtor's

11   Richland, Washington facility;

12

13    (f) the Defendants expended considerable funds to pay debts purportedly

14   owed to insiders or entities otherwise related or connected with

15   Defendants Doreen Chiu and Frank Chiu, while delaying or avoiding

16   completely payment of legitimate debts for services essential to the

17   Company's ongoing business operations;

18

19    (g) Defendant Doreen Chiu, upon information and belief, fraudulently

20   induced creditors to enter into contracts.  The end result of these

21   fraudulent inducements problems was that customers lost faith in the

22   Company's senior management and took their business elsewhere, and the

23   Company could not meet its ongoing obligations and could not service its

24   secured debt.

25   **Appointment of Chapter 11 Trustee**

26    47.    Section 1104(a)(1) of the Bankruptcy Code requires a court to order

27   the appointment of a trustee for cause, including fraud, dishonesty,

incompetence, or gross mismanagement of the affairs of the debtor by current management.

48.   By order dated January 25, 2002, the Court directed that the United States Trustee appoint a chapter 11 trustee for ATG.

49.   On February 6, 2002, the United States Trustee appointed, subject to Court approval, the Plaintiff to serve as the chapter 11 trustee for ATG.

50.   On February 11, 2002, the Court entered an Order Approving the Appointment of the Plaintiff as Chapter 11 Trustee for ATG.

51.   The Trustee filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code on June 12, 2002 on behalf of each of the Subsidiaries.

52.   Upon Motion of the Trustee, each of the Debtor's chapter 11 cases where converted to cases under chapter 7 of the Bankruptcy Code on or about April 28, 2004.  The Plaintiff was thereupon appointed to serve as the interim chapter 7 trustee for ATG, and later became the permanent chapter 7 trustee.

53.   Immediately upon his appointment as the Chapter 11 Trustee in February of 2001, the Trustee met with the United States Trustee, and various creditors.  He also closed down the Debtor's executive offices in Hayward, California to reduce expenses and accepted the resignations of the Company's former senior management, including the Defendants.

54.   In its Schedules of Liabilities and Assets filed with the Court (the "Bankruptcy Schedules"), ATG disclosed that it had assets in excess of $100,000,000.  Upon information and belief, the Bankruptcy Schedules were prepared and/or reviewed by Defendants and Defendants approved and/or ratified the Bankruptcy Schedules.  The Bankruptcy Schedules were signed by the Defendant Frank Chiu, who verified the accuracy of said schedules under penalties of perjury.

55.     Upon information and belief, at the time Defendants caused the Bankruptcy Schedules to be ratified, approved and filed with this Court, Defendants knew, or should have known, that the Company's assets were grossly overstated in the Bankruptcy Schedules.

56.     As matters came to light during the pendency of the Bankruptcy Case, it became clear to the Trustee and creditors that the Debtor's assets had been substantially overvalued by Defendants and that such assets were, in fact, worth far less than had been reported in the Company's Bankruptcy Schedules.

57.     Indeed, even after months of marketing and conducting discussions and negotiations with interested parties for the sale of the Debtor's assets and operations, the highest and best offers that the Trustee received for the Company's two primary marketable assets were: (a) $4,000,000 for the Company's nuclear services operations (the "Nuclear Services Division") and (b) $3,150,000 for its radioactive waste cleanup facilities and operations located at 2025 Battelle Boulevard, Richland, Washington (the "Richland Assets").  In the absence of any higher and better offers, the Trustee accepted the aforesaid offers and the Court approved such sales, which have since been consummated.

58.     The Defendant's grossly mismanaged the Company and wasted Company assets when they, inter alia:

(a) failed to preserve the operations of ATG's business by making a prompt bankruptcy filing;

(b) failed to cause the Company to pursue revenue sources such as the rental of its casks for transporting waste because they wanted to capture a premium on the transportation cost;

(c) exposed ATG to the risk of losing its Washington Department of Ecology licenses by failing to cause ATG to pay the fee required to maintain its licenses;

(d) failed to deal in any appropriate manner with the nearly 9 million lbs. of unprocessed customer waste materials delivered to the Company's facilities prior to the Petition Date;

(e) caused ATG to pay far less important expenses when it was permitted by UCB to use cash in late November to prepare for a bankruptcy filing; and

(f) caused ATG to fail to comply with applicable rules of the NASDAQ market which resulted in the delisting of ATG's stock from the NASDAQ market. These and other acts and omissions by the Defendant constitute gross mismanagement of the Company and waste of the Company's assets.

59.    Defendants, for their own personal benefit, and at great financial loss to the Debtor and its creditors, focused only on trying to restart the Company's business without regard to whether it made economic sense or not. Instead of encouraging or even considering a potential sale of the Company before it ran out of cash, the Defendants refused to respond to parties that submitted written offers to purchase the Company.  Defendants' failure to pursue or even consider a sale of the Company's assets while it was still operating and while it still had the potential to generate significant value, ultimately resulted in the estate's realization of far less value for those assets.

60.    The Defendants' failure to pursue opportunities for sale is yet another example of the Defendants' gross mismanagement and waste of corporate assets and breach of their fiduciary duties to shareholders and creditors.  Moreover, Defendants' failure to exercise due diligence in refusing to consider the offers to purchase the Company was in contravention of their fiduciary obligations to maximize assets for the benefit of the Company, its shareholders and its creditors.

61.   At the time Defendants failed to consider the purchase offers, the Defendants knew or should have known that a reorganization of the company was not feasible and that a change in control was imminent.

62.   As discussed above, the Defendants caused or allowed the Company to pursue a wasteful course which caused irreparable harm to the Debtor and all of the estate's creditors without a corresponding benefit to the estate or the rehabilitation of the Debtor.

63.   In investigating the acts, conduct and financial affairs of the Debtor, the Trustee discovered a number of transactions involving insider dealings by certain of the Defendants, including, but not limited to:

(a)   the Defendants caused the Company to pay a substantial "buyers commission" ($270,000) to the buyer of the Debtor's corporate facility in Freemont, California, by way of a reduction from the purchase price, notwithstanding that neither the Company nor the buyer (an entity related or connected with Defendants Frank Chiu and Doreen Chiu) employed a broker in connection with the transaction;

(b) the Defendants caused the Company to make preferential payments during the one year preceding the Petition Date to Defendants Doreen Chiu and Frank Chiu in the aggregate sum exceeding $650,000;

(c) the Defendants caused the Company to make preferential payments during the one year preceding the Petition Date in the approximate amount of $803,000 to DNL, Company ("DNL"), and an additional $147,000 to Lawrence Chiu, the principal of DNL and a family relation of Defendants Doreen Chiu and Frank Chiu;

(d) the Defendants retained proceeds from the sale of property in Folsom, California, previously owned by the Company, and caused the Company to record the transaction as payments on loans owed to officers;

1       (e) the Defendants caused the Company to pay closing costs, taxes and

2       mortgage payments on real property in Benton County, Washington, the

3       title to which property is held in the name of Defendants Frank Chiu and

4       Doreen Chiu, and not the Company; and

5       (f) the Defendants Frank Chiu and Doreen Chiu borrowed against, and

6       have not repaid, the full cash value of a whole life insurance policy under

7       which the Company was the beneficiary and paid all of the premiums.

8       64.   Because of their positions as officers or directors, or both, of ATG,

9 Defendants owed the Company and its shareholders and creditors fiduciary

10 obligations of candor, fidelity, trust and loyalty, and were required to use their

11 ability to control ATG in a fair, just and equitable manner, as well as to act in

12 furtherance of the best interests of the Company, its shareholders and creditors.

13 In addition, Defendants owed ATG a fiduciary duty to exercise due care and

14 diligence in the management and administration of the affairs of the Company

15 and in the use and preservation of its property and assets.

16       65.   To discharge the aforesaid duties, Defendants were required to

17 exercise reasonable and prudent supervision over management and the policies,

18 practices, controls and financial affairs of the Company pursuant to their

19 fiduciary obligations to use the same care and diligence as would an ordinary

20 prudent person in a like position.  Defendants were required, among other

21 things:

22 (a)       to, in good faith, manage, conduct, supervise and direct the

23 business and affairs of ATG carefully and prudently and in accordance with the

24 laws of California, Washington, Tennessee, South Carolina, the laws of the

25 United States of America and the Company's own charter and by-laws;

26 (b)       to neither violate nor knowingly permit any officer, director or

employee of ATG to violate applicable federal and state laws, rules and regulations or any Company rule or regulation;

(c)    to remain informed as to the status of ATG's operations, and upon the receipt of notice or information of imprudent, illegal or unsound practices, to make a reasonable inquiry in connection therewith, and to take steps to correct such conditions or practices and make such disclosures as are necessary to comply with federal or state laws;

(d)    to exercise reasonable control and supervision over the Company's public statements to the securities markets by the officers and employees of ATG;

(e)    to supervise the preparation, filing and/or dissemination of any Securities and Exchange ("SEC") filings, press releases, audits, reports or other information required by law, to examine and evaluate any audits or other financial information concerning the financial condition of ATG and to cause ATG to obey and comply with and not violate any federal or state securities laws; and

(f)    to maintain and implement an adequate system of controls and information systems, such that no officer, director or employee of the Company would make false statements about ATG to the securities markets or would be able to or encouraged to violate federal or state laws restricting insider trading.

66.    As set forth above and hereinafter, Defendants have failed to satisfy each of the foregoing requirements.

## CAUSES OF ACTION

67.    Plaintiff hereby sues Defendants, jointly and severally, based upon the following causes of action for all damages proximately caused thereby, the

amount of said damages to be determined at trial, but in an amount not less than $92,850,000.

**COUNT I**

**<u>BREACH OF FIDUCIARY DUTIES</u>**

68.     Plaintiff reasserts and incorporates by reference each of the foregoing paragraphs as if set forth fully herein.

69.     Defendants were at all times during the Relevant Period fiduciaries of ATG and owed ATG, its shareholders and creditors various fiduciary duties, including but not limited to the duties of loyalty, candor, fidelity, honesty, due care, good faith and fair dealing.

70.     Defendants, in their capacity as officers and/or directors of ATG, breached their aforesaid fiduciary duties to the Debtor, its shareholders and creditors by, among other things, engaging in the acts, conduct, errors and omissions described above and hereinafter.

71.     Defendants Doreen Chiu and Frank Chiu, in their capacities as officers and directors of the Company, further breached their aforesaid fiduciary duties to the Company during the Relevant Period by, among other things:

(a)     subordinating the best interests of the Company to further their own personal interests by proposing and insisting on unreasonably high and unconscionable compensation from the Company without regard to the financial conditions of the Company;

(b)     exceeding their authority as officers and directors of ATG by causing the Company to disburse monies to them or to other persons or entities on their behalf and for their own benefit;

(c)     using their respective positions as Chief Executive Officer and Chief Financial Officer of the Company to exert improper influence on the other officers and directors of the Company in connection with the approval and/or

1    ratification of, *inter alia,* (i) unconscionable compensation arrangements, (ii)

2    unlawful procurements of government contracts, and (iii) improper and/or

3    unlawful transactions, agreements and contracts by and between ATG and

4    persons or entities directly related to, or controlled by, Doreen Chiu and/or

5    Frank Chiu; and

6    (d)         proposing, agreeing to, approving and/or ratifying (i)

7    unconscionable compensation arrangements, (ii) unlawful procurements of

8    government contracts, and (iii) improper and/or unlawful transactions,

9    agreements and contracts by and between ATG and persons or entities directly

10   related to, or controlled by, Doreen Chiu and/or Frank Chiu, and without

11   considering all reasonably available material information relating thereto, each

12   as described in preceding paragraphs.

13        72.    Each of the Defendants, other than Defendants Doreen and Frank

14   Chiu, in his or her capacity as an officer and/or director of the Company, further

15   breached his or her fiduciary duties to the Company by, among other things:

16   (a)         subordinating the best interests of ATG to their allegiance to

17   Defendants Doreen and Frank Chiu;

18   (b)         failing to exercise independent judgment with respect to review,

19   approval and/or ratification of (i) unconscionable compensation arrangements

20   for Defendants Doreen and Frank Chiu and other senior executive officers of the

21   Company, (ii) unlawful procurements of government contracts, and (iii)

22   improper and/or unlawful transactions, agreements and contracts by and between

23   ATG and persons or entities directly related to, or controlled by, Doreen Chiu

24   and/or Frank Chiu;

25   (c)         participating in Defendants Doreen and Frank Chiu's breaches of

26   fiduciary duties to the Company by agreeing to, approving and/or ratifying

27   Defendants Doreen and Frank Chiu's actions, each as described in preceding

1  paragraphs;

2  (d)         proposing, agreeing to, approving and/or ratifying (i)

3  unconscionable compensation arrangements, (ii) unlawful procurements of

4  government contracts, and (iii) improper and/or unlawful transactions,

5  agreements and contracts by and between ATG and persons or entities directly

6  related to, or controlled by, Doreen Chiu and/or Frank Chiu, and without

7  considering all reasonably available material information relating thereto, each

8  as described in preceding paragraphs; and

9  (e)         failing to monitor how Defendants Doreen and Frank Chiu used the

10  Company's funds and assets for their own personal benefit.

11         73.    The Debtor, its estate, shareholders and creditors have been

12  substantially injured by reason of Defendants' knowing breaches of their

13  fiduciary duties.  Accordingly, Plaintiff, as representative of the Debtor's

14  estate, seeks damages and other relief for the Debtor's estate as hereinafter set

15  forth.

16                              **COUNT II**

17             **BREACH OF FIDUCIARY DUTIES TO CREDITORS**

18         74.    Plaintiff reasserts and incorporates by reference each of the

19  foregoing paragraphs as if set forth fully herein.

20         75.    ATG was, in fact, insolvent at all times during the Relevant Period.

21         76.    While insolvent, Defendants, in their capacity as officers and/or

22  directors of ATG, became obligated as trustees to safeguard the Company's

23  assets for the benefit of its creditors.

24         77.    As trustees, Defendants owed fiduciary duties to the creditors not to

25  divest, dissipate or unduly risk assets which might otherwise be used to satisfy

26  the claims of creditors.

78.     Defendants violated those fiduciary duties by, among other things, engaging in the acts, conduct, errors and omissions described above and hereinafter.

79.     The Debtor, its estate, shareholders and creditors have been substantially injured by reason of Defendants' knowing breaches of their fiduciary duties.  Accordingly, Plaintiff, as representative of the Debtor's estate, seeks damages and other relief for the Debtor's estate as hereinafter set forth.

## COUNT III

## MISMANAGEMENT AND WASTE OF CORPORATE ASSETS

80.     Plaintiff reasserts and incorporates by reference each of the foregoing paragraphs as if set forth fully herein.

81.     Each of the Defendants owed to the Company, its shareholders and creditors the obligation to protect the Company's assets from undue loss or waste.

82.     Each of the Defendants further owed a duty of reasonable care and prudence to the Company.

83.     Defendants breached their obligations to the Company and wasted corporate assets by, among other things, their acts, conduct, errors and omissions described above.

84.     The acts, conduct, errors and omissions of the Defendants previously alleged constitute gross mismanagement of the Company's business by the Defendants.

85.     Defendants' gross mismanagement of the Company's business resulted in waste of the Company's assets.

86.     The Debtor, its estate, shareholders and creditors have been substantially injured by reason of Defendants' gross mismanagement and

intentional waste of corporate assets.  Accordingly, Plaintiff, as representative of the Debtor's estate, seeks damages and other relief for the Debtor's estate as hereinafter set forth.

## COUNT IV.

## OBJECTION TO CLAIMS

87.    Plaintiff reasserts and incorporates by reference each of the foregoing paragraphs as if set forth fully herein.

88.    Plaintiff hereby objects, pursuant to section 502 of the Bankruptcy Code, to each and every claim and proof claim filed by Defendants in the Bankruptcy Case.

89.    Plaintiff further asserts each of the foregoing causes of action against Defendants as counterclaims to the claims filed by Defendants in the Bankruptcy Case.

[REMAINDER OF THIS PAGE INTENTIONALLY LEFT BLANK]

1

**PRAYER FOR RELIEF**

2

WHEREFORE, Plaintiff, on behalf of the Debtor's estate, its creditors and

3

its shareholders, prays for judgment as follows:

4

A.    Awarding Plaintiff compensatory damages against each and every

5

Defendant, jointly and severally, in an amount to be determined at trial, but in

6

an amount not less than $92,850,000;

7

B.    Awarding Plaintiff pre-judgment interest from the day of the wrongs

8

complained of herein to the day of judgment herein;

9

C.    Awarding Plaintiff his costs and expenses in this litigation, including but

10

not limited to, reasonable attorneys' and experts' fees;

11

D.    Entry of an Order directing that each and every Defendant account for all

12

damages caused by them and directing them to turnover to Plaintiff, pursuant to

13

section 542 of the Bankruptcy Code, all profits they have obtained as a result of

14

their breach of fiduciary duties;

15

E.    Awarding Plaintiff such other and further relief as this Court deems just

16

and proper.

17

18

Dated this ___ day of March, 2005 at Norwalk, Connecticut.

19

20

**DEMAND FOR TRIAL BY JURY**

21

22

The Plaintiffs hereby demands trial by jury of all issues in this proceeding so

23

triable.

24

25

26

27

28

29

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

JACOBS PARTNERS LLC
Counsel for Robert I. Hanfling,
Chapter 7 Trustee for ATG, Inc.


By:_____
Mark R. Jacobs
Robert M. Fleischer
Les L. Lane
Gerry A. McMahon
Merritt View
383 Main Avenue, PH
Norwalk, CT 06851
Tel: 203.846.6622
Fax: 203.846.6621